[Civil No. 4527. Filed February 23, 1943.]

[134 Pac. (2d) 162.]

SOUTHWEST LUMBER MILLS, INC., a Corporation, Petitioner, v. INDUSTRIAL COMMISSION OF ARIZONA, and L. C. HOLMES, LYNN LOCKHART and I. P. McBRIDE, as Members of the Industrial Commission of Arizona; NUNCY EVANS, and R. V. WILLIS, Trustee of the Estate of Bruce Gibson, Respondents.

Mr. Henry C. McQuatters and Messrs. Fennemore, Craig, Allen & Bledsoe, for Petitioner.

Mr. Rouland W. Hill, for Respondent Industrial Commission, and Mr. H. S. McCluskey, of Counsel.

Mr. Guy Axline, for Respondent Evans.

Mr. George H. Rawlins, for Respondent Willis, Trustee.

ROSS, J.—The Industrial Commission, after a hearing as provided by law (Art. 9, Chapter 56, Arizona Code 1939), made its award in favor of claimant Nuncy Evans and against the Southwest Lumber Mills, Inc., a Nevada corporation (hereinafter referred to as the Company), and the latter being dissatisfied therewith has brought the matter here for review by writ of *certiorari*.

The claimant lost his left eye while doing the work he was employed to do. The question for our consideration and determination is whether the claimant, at the time of the accident and injury, was an employee of the Company. The latter had a permit from the United States Forest Service to cut and remove certain standing timber from what is designated as the "Rock Top Unit" in the Coconino National Forest, near Mormon Lake, to its sawmill at Flagstaff, Arizona. It contracted such work to one Bruce Gibson (hereinafter sometimes called the contractor), who agreed to furnish, at his own expense, all labor, tools, machinery, equipment and supplies necessary to do the work; to conform with all the state laws, rules and regulations and with the forest regulations; to carry all insurance required by law, and to deliver logs to the mill pond of the company at Flagstaff for a specified price.

Evans' claim for compensation was originally made against the Company and Bruce Gibson, the Contractor, but during the course of the proceedings before the Industrial Commission Bruce Gibson was declared a bankrupt and the award for compensation was made against the Company alone.

The case turns upon the point as to whose employee Evans was at the time of his injury. If under the facts and law he was an employee of the Company, the latter would be liable in damages for his injury. But if he was at such time an employee of Bruce Gibson, and the latter was an independent contractor, the liability would belong to Gibson and not the Company.

Section 56–928, Arizona Code 1939, (a part of the Workmen's Compensation Law) defines an employer and an independent contractor as follows:

" . . . Where an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such

contractor and the persons employed by him, and his sub-contractor and the persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer. A person engaged in work for another, and who while so engaged, is independent of the employer in the execution of the work, not subject to the rule or control of the person for whom the work is done, but engaged only in the performance of a definite job or piece of work, and subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor and an employer within the meaning hereof.''

■ If the Company retained supervision and control of the cutting of the timber and its delivery to its mill pond, then Gibson and his employees were its employees, but if Gibson's engagement was not subject to the rule or control of the Company and only subordinate thereto in effecting a result as designed by it, he was an independent Contractor and an employer of Evans. Counsel for claimant, to sustain their contention that he was an employee of the Company, introduced as evidence before the Industrial Commission two contracts, one between Bruce Gibson (the Contractor) and the Company, and the other between the Company and the Forest Service. The first paragraph of the former reads as follows:

''1. The Contractor is to cut, buck and limb all of the merchantable timber marked for cutting by the U. S. Forest Service of the Department of Agriculture of the United States Government, hereinafter in this agreement designated as the Forest Service, in an area in the Coconino National Forest, Coconino County, Arizona, known as the Rock Top Unit . . . containing about ten million board feet of timber, more or less, whereon all of the above timber has been purchased from the Forest Service by the Company under a timber sales agreement incorporated herein by reference; to skid, bunch and limb the logs obtained from the above specified cutting area until all of the merchantable timber in such area has been logged; to load

upon and transport said logs by trucks and trailers, and unload those logs produced in the mill pond at Flagstaff.''

This contract is quite long, the rest of its contents being devoted to statements of when and how the Contractor should perform it. Paragraphs 2 and 3 read as follows:

''2. The Contractor agrees to log this timber, weather permitting, commencing on or about July 3, 1940, in full accordance with this agreement and the Contractor will perform the entire operation as an independent contractor from tree stump to the mill pond at Flagstaff and continue these operations until all such merchantable timber in this area has been logged.

''3. The Contractor will furnish, at his own expense and risk, all labor, tools, supplies, materials, trucks, trailers, sleds, horses and other equipment which is necessarily required for the prompt and efficient performance of this agreement, and he further acknowledges that he is, in all respects, acting hereunder as an independent contractor.''

By other provisions of the contract the Contractor bound himself to conform with the policy of the Forest Service; to follow its regulations and all laws and rules and the general policy of such Service applicable to the cutting area, and to comply with timber sale regulations. It seems claimant believes or asserts that these provisions, and especially the following, give the Company control or supervision of the manner of performing the contract:

''IV. This agreement may not be assigned by the Contractor without the written consent of the Company. It may be immediately terminated by the Company with or without notice, anything to the contrary in this agreement notwithstanding, in event of its attempted assignment by the Contractor, the appointment of a receiver for the business or the Contractor, his insolvency or bankruptcy, the attachment of or filing of liens upon his trucks or other equipment or garnish-

ment proceedings that will, in the opinion of the Company, prevent the Contractor carrying on his operations, or in event of his failure to possess a contract carrier's license at any time or times when the same may be required, or to carry proper insurance, or otherwise to comply with the laws, rules, and regulations of the State of Arizona or the Forest Service."

The timber sales contract between the purchaser (Company) and the Forest Service provides that the plan of logging operations shall be approved by the Forest supervisor or officer to whom he may delegate authority to give his approval; that brush shall be disposed of as the work progresses; that only marked live trees shall be removed; that no unnecessary damage shall be done to young growth or trees left standing; that unmarked trees which are badly damaged in logging shall be cut if required by the Forest officer in charge; that care shall be exercised by the purchaser against forest fires, etc. Section 32 of such contract reads:

"32. At all times when logging operations are in progress the purchaser shall have at the main camp of his employees working on the sale area, a representative who shall be authorized to receive, on behalf of the purchaser, any or all notices and instructions in regard to work under this agreement given by the Forest officer in charge, and to take such action thereon as is required by the terms of this agreement."

The provisions in these two contracts dovetail into each other. Those in the contract with the Forest Service are the conditions upon which the timber may be cut and removed to the mill pond. They are imposed by the national government. The work done in their performance is not under the supervision or control of either the Company or the Contractor but under the supervision and control of the Forest Service and must conform with the rules and regulations of that agency.

In *Grabe* v. *Industrial Commission,* 38 Ariz. 322, 299 Pac. 1031, 1034, we said:

" . . . Under section 1418, *supra* [56–928], if A procures B to do certain work for him which is a part or process in A's trade or business, and retains supervision or control over the work, then B and all B's employees and subcontractors to the Nth degree are, for the purposes of the Compensation Act, employees of A, no matter what the terms or method of employment or compensation. It is obvious that were this not so the beneficent purposes of the act could and would be easily defeated or evaded by unscrupulous employers through the aid of various dummy intermediaries. The statute therefore brushes aside all forms and subterfuges and provides that one just, simple, and definite test. If the work be part of the regular business of the alleged employer, does he retain supervision or control thereof? All other matters are of importance only as they throw light on this question."

In *Fox West Coast Theatres, Inc.,* v. *Industrial Commission,* 39 Ariz. 442, 7 Pac. (2d) 582, 585, the question was whether the claimant's employer was an independent contractor and, after citing the above quotation from the Grabe case, we said:

"So far as the *direct* evidence is concerned, everything points to the inevitable conclusion that Layman was an independent contractor. He was working under a written contract for a definite sum, and was required to furnish all labor necessary for the completion of the contract. Only Layman and his foreman, Obzina, ever exercised any control or supervision over Larcom in the course of the work, or made him any payments for his labor. . . . "

If we substitute Gibson for Layman and Evans for Larcom, the fact situation is the same. In *United States Fidelity & Guaranty Co.* v. *Industrial Commission,* 42 Ariz. 422, 26 Pac. (2d) 1012, 1015, after giving the test of an employer under the Compensation Law, we said:

" . . . Without exception the general test laid down to determine the difference between an independent

contractor and an employee is in substance whether the alleged employer retains supervision or control over the method of reaching a certain result, or whether his control is limited to the result reached, leaving the method to the other party, which is in effect the same as the test used by us in the two cases last cited [being the Grabe and Fox West Coast Theatre cases, *supra*]. . . . ''

In *Ocean Accident & Guarantee Corporation, Ltd.,* v. *Kennison,* 42 Ariz. 349, 26 Pac. (2d) 113, 116, we said, after quoting the portion of section 56–928, *supra,* defining an independent contractor:

''This is a restatement of the common law and of the rule announced by this court in *Swansea Lease, Inc.* v. *Molloy,* 20 Ariz. 531, 183 Pac. 740. The facts clearly bring the case within the definition of an 'independent contractor.' Here was a definite job or piece of work that the corporation desired to have done, the doer in its performance being subordinate to the corporation's supervision and control only in effecting the result in accordance with its design.''

Gibson contracted to produce a definite result for a specified price. *During the process he was not under the rule or control of the Company beyond making the result conform to the Company's design.* We reiterate what we said in the Grabe case to the effect that we will not tolerate the adoption of any rules by employers to defeat claims of injured employees, but there is nothing in this case to indicate that the Company employed Gibson to perform a finished job of reducing the timber to logs and delivering them to the mill pond, all for a specified price, with the purpose or intent of evading liability or defeating the Compensation Law. The statute (section 56–928) recognizes the right to do what was done. It permits an employer to contract with an independent contractor the performance of ''a definite job or piece of work'' that the employer has agreed to perform, as was done here.

Counsel for claimant contend that paragraph IV of the contract (quoted above) between the Company and the Contractor empowers the former to cancel the contract at its own will and pleasure. If this provision of the contract were susceptible of such a construction it would be very strong evidence that the Company retained supervision and control of the work of felling, hauling and delivering the timber to its mill pond at Flagstaff. It authorizes the Company, if the Contractor without its consent assigns or attempts to assign the contract, or becomes insolvent or bankrupt, etc., to terminate the contract. The grounds upon which the contract might be terminated by the Company must be substantial. It could not upon its own wish or at its pleasure terminate the contract.

Then there is section 32 of the timber sales contract (quoted above). It requires the purchaser (the Company here) of timber to have a representative at the main camp of his employees to receive notices and instructions from the Forest officer in charge and "to take such action thereon as is required by the terms of this agreement." Such representative's duties are very limited and well defined. He certainly has no power over the operation of delivering the timber to the mill pond.

The oral evidence before the Industrial Commission is to the effect that the Forest ranger, that is, the government employee, was present during the operations of reducing the timber to logs and conveying them to the mill pond, and that such ranger would tell the log cutters (of whom claimant was one) how to cut timber "and not to leave the tops, and not to break down the seed trees and to cut the trees he had marked." In other words, the Forest ranger's duty was to see that the rules and regulations for the preservation of the young timber were observed. Evans stated he was employed by Bruce Gibson; that at the time of his injury

he was working for him and that Gibson paid him his wages.

■ We think the evidence conclusively shows that Gibson was an independent contractor and that claimant was his employee at the time and place of his injury, and not the employee of the Southwest Lumber Mills, Inc. For these reasons, the award against the latter must be set aside, and it is so ordered.

STANFORD, J., concurs.

McALISTER, Chief Justice (specially concurring).

I concur in the opinion of Justice ROSS that Gibson was an independent contractor and as such the employer of Nuncy Evans at the time of his injury. The Workmen's Compensation Law permits an employer to procure a person to do certain work for him as an independent contractor and at the same time places upon that employer no responsibility whatever relative to the payment of compensation in case an employee of such an independent contractor is accidently injured while in discharge of his duty, notwithstanding the fact that the work the employee is doing at the time is in the business of the employer.

It is exceedingly regrettable that an employee injured in the performance of his duty for an employer who comes within the provisions of the Compensation Law, and is clearly entitled to compensation, must be denied his right merely because his employer was an independent contractor who failed to procure insurance as required by that law for the protection of those working for him. If the section providing for independent contractors, 56–928, Arizona Code 1939, made the employer, who engages such a contractor to perform work for him, liable for the compensation of the employees of the latter if he comes within the terms of the law and fails to procure insurance, or to keep it in

force, such injustice as that with which we are here confronted would not be possible. It seems to me every employer who procures an independent contractor to do work for him in his trade or business, with as many as three persons in his employ, should be responsible under the law for the payment of compensation to such employees if he allows such a contractor to begin work without procuring insurance or to operate after it has expired. Every employer, I take it, would like to see the men working in a trade or business of his protected in case of injury and it would not be difficult for him to bring about this result by requiring any independent contractor he engages to procure insurance covering his employees before or upon beginning work and if he should thereafter permit it to lapse to cease work immediately.

A change curing this defect in the law would not, it is true, help the respondent Evans, but it would undoubtedly be the means of preventing many other injured employees or their dependents in case of death, from suffering similar losses.