NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANTONIO VEGA, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA,
*Respondent*,

SD CONTRACTING, LLC*, MCBRIDE CONSTRUCTION**,
*Respondent Employers*,

TRAVELERS**, *Respondent Carrier*,

SPECIAL FUND DIVISION/NO INSURANCE SECTION*,
*Respondent Party in Interest.*

No. 1 CA-IC 16-0072
FILED 11-16-2017

Special Action - Industrial Commission

ICA Claim No. 20150-060062
Carrier Claim No. 127-CB-EIU1897K**

J. Matthew Powell, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Snow, Carpio & Weekley, PLC, Phoenix
By Dennis R. Kurth
*Counsel for Petitioner*

Industrial Commission of Arizona, Phoenix
By Jason M. Porter
*Counsel for Respondent*

Lester, Norton & Brozina, PC, Phoenix
By Christopher S. Norton
*Counsel for Respondent Employer SD Contracting, LLC*

Lundmark, Barberich, La Mont & Slavin, PC, Phoenix
By R. Todd Lundmark
*Counsel for Respondent Employer McBride Construction Company and*
*Respondent Carrier Travelers*

Industrial Commission Special Fund Division/
No Insurance Section, Phoenix
By Scott J. Cooley
*Counsel for Respondent Party in Interest*

---

**MEMORANDUM DECISION**

Judge Margaret H. Downie (retired) delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Jennifer B. Campbell joined.

---

**D O W N I E**, Judge:

¶1        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for a noncompensable claim.  For the following reasons, we affirm the award.

### FACTS AND PROCEDURAL HISTORY

¶2        On December 18, 2014, petitioner Antonio Vega was working on a roof when he fell through a skylight and injured his back. Vega filed a workers' compensation claim, naming SD Contracting, LLC ("SD") as his employer.  The Special Fund Division/No Insurance Section ("Special Fund") denied the claim, and Vega requested a hearing.  On motion of the Special Fund, McBride Construction Company ("McBride") and its insurance carrier were joined as respondents.

¶3          An administrative law judge ("ALJ") held a hearing and received testimony from Vega, Siti Ng — co-owner of SD, Stephen McBride — vice president of McBride, and Nathan McBride — former project manager for McBride.  The hearing evidence established that Ng and Danny Gonzales formed SD in 2014.[1]  SD subcontracted only with McBride and, according to Ng, had performed at least 20 jobs for McBride before the date of Vega's injury.  At the time of Vega's injury, SD was working as McBride's subcontractor at a condominium complex project. Nathan McBride testified that the condominium project required four types of subcontractors: demolition, air conditioning, plumbing, and roofing. McBride selected SD based on its ability to perform both the demolition and air conditioning work.

¶4          The master subcontractor agreement between SD and McBride stated that SD was an independent contractor and would "furnish all labor, materials, equipment, [and] services."  Gonzales signed an "Exemption of Workers Compensation Coverage" on behalf of SD, which stated, in pertinent part:

> I am an independent contractor and I am doing business and performing work as:
>
> S.D. Contracting, LLC
>
> I am not an employee of McBride Construction Co. Inc.
>
> I and my employees shall not be entitled to workers' compensation coverage from McBride Construction/McBride Roofing and Restoration.   I   understand   that   if   I   do   have   any employees/subcontractors working for me, I must maintain workers' compensation coverage for them.

¶5          Vega testified that SD contacted him, offering demolition work that paid $150 a day.  Vega had worked for SD twice before on one or two-day jobs.  On those prior occasions, Gonzales met Vega at the job site, told him what work to complete, and then left him to perform the work.  For the condominium roof job, Gonzales texted Vega the address, a picture of the job site, and the start time.  Gonzales also asked Vega to bring another worker with him.

---

[1]          Repeated attempts to have Gonzales participate in the proceedings — including by subpoena — were unsuccessful.

**¶6**        Vega met Gonzales and another worker, Aldo, at the job site. The workers spent the first two hours assembling scaffolding based on instructions given by Gonzales and Nathan McBride.  Gonzales then showed Vega and Aldo the roof areas marked for demolition.  Gonzales left the job site, and Vega and Aldo removed shingles and stucco for six to seven hours using their own tools.  Vega testified they had just finished the demolition work when he slipped and fell through a skylight, sustaining a vertebral fracture.  Vega believed he was SD's employee, and he expected to continue working for SD.

**¶7**        Nathan McBride testified he was at the job site before work began on December 18 to inspect it, speak with the clients, and drop off scaffolding McBride had rented for its subcontractors' use.  McBride also rented a dumpster for the project.  The demolition crew was responsible for assembling the scaffolding, and Nathan watched them assemble the first sections to ensure it was done correctly.  Nathan also went onto the roof with Gonzales to spray-paint areas where shingles and stucco were to be removed.  Although he expected demolition to take one or two days, Nathan testified he did not tell the subcontractors when or how to do their work, and he offered only "a rough time line" for the project.  Nathan did not know Vega and was not present when he was injured.  He learned of the injury from Gonzales.  Nathan reported the injury to his superiors at McBride and testified that his only other involvement was to visit the job site the next day to ascertain what repairs were necessary.

**¶8**        After the parties filed post-hearing memoranda, the ALJ entered an award finding Vega's injury noncompensable because he was an independent contractor.  Vega timely requested review, but the ALJ affirmed the award.  Vega next brought this appeal.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(2), 23-951(A), and Arizona Rule of Procedure for Special Actions 10.

## DISCUSSION

**¶9**        We consider the evidence in the light most favorable to upholding the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).  In reviewing ICA awards, we defer to the ALJ's factual findings. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). However, we make an independent determination of whether a worker is an employee or an independent contractor. *Anton v. Indus. Comm'n*, 141 Ariz. 566, 569 (App. 1984).  That determination is governed in the first instance by A.R.S. § 23-902, which provides, in pertinent part:

. . .

B.  When an employer procures work to be done for the employer by a contractor over whose work the employer retains supervision or control, and the work is a part or process in the trade or business of the employer, then the contractors and the contractor's employees, and any subcontractor and the subcontractor's employees, are, within the meaning of this section, employees of the original employer.  For the purposes of this subsection, "part or process in the trade or business of the employer" means a particular work activity that in the context of an ongoing and integral business process is regular, ordinary or routine in the operation of the business or is routinely done through the business' own employees.

C.  A person engaged in work for a business, and who while so engaged is independent of that business in the execution of the work and not subject to the rule or control of the business for which the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to that business only in effecting a result in accordance with that business design, is an independent contractor.

. . .

¶10        In determining whether a claimant is an employee, courts consider the totality of the circumstances of the work and examine various indicia of control, *Reed v. Industrial Commission*, 23 Ariz. App. 591, 593 (1975), including "the duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work, and whether the work was performed in the usual and regular course of the employer's business." *Home Ins. Co. v. Indus. Comm'n*, 123 Ariz. 348, 350 (1979).

¶11        The ALJ applied the correct analytic framework. In discussing the relevant factors, he found that removing shingles and stucco "are usual and regular components" of SD's business, but nonetheless concluded Vega was an independent contractor based on

other indicia of control that "tip[] the balance." The other indicia included the fact that SD hired and paid Vega on a job-by-job basis, with no withholding or tax forms. Vega used his own tools for the work. Gonzales met Vega at the job site, described the work to be done, and then left him alone to complete it. Vega testified he did not need instructions about how to perform the work. The ALJ's finding that Vega "was left alone to determine for himself the best method for effectuating the final result" is supported by the record.

¶12        Contrary to Vega's suggestion, *Anton* does not compel a finding that he was SD's employee. In *Anton*, a pulpwood contractor engaged woodcutters to cut firewood according to specifications imposed by the company to which the contractor sold the wood. 141 Ariz. at 568. The woodcutters set their own hours and used their own equipment. *Id.* at 570. The contractor did not withhold taxes. *Id.* Because of their skills and competence, the woodcutters required little supervision. *Id.* In concluding that the woodcutters were employees of the contractor, this Court noted that rather than contracting for "performance of a definite job or piece of work," the contractor had "contracted out the very heart" of his enterprise, necessarily demonstrating his right to control. *Id.* at 571, 574.

¶13        In this case, although removing shingles and stucco "are usual and regular components" of SD's business, as the ALJ found, those activities are only a part of SD's business. Evidence established that SD also did drywall repairs, painting, roof repairs, carpentry, "texture," and block wall repairs. Moreover, the scope of SD's work on the condominium project was substantially broader than the demolition work Vega performed. SD's contract with McBride required SD to, among other things: remove existing stucco, wire, and foam; haul debris; "[d]etach and reset AC unit;" replace "ductwork transitions;" install new metal frames; and "[i]nstall electrical disconnect boxes. . . . [and] new condensation drain lines." Unlike *Anton*, SD acted as more than a conduit for a finished product achieved by Vega. *See id.* at 574 (Noting that the contractor served "as little more than a conduit" of the woodcutters' finished product and that "supplying pulpwood . . . was not merely *in* the regular course of [the contractor's] business, *it was [the contractor's] business*."). The evidence supports the conclusion that SD contracted with Vega for "performance of a definite job or piece of work," as opposed to contracting out "the very heart" of its enterprise. *Id.*

¶14 Finally, because the ALJ properly concluded that Vega was not SD's employee, McBride was not Vega's statutory employer as a matter of law. *See* A.R.S. § 23-902(B) (employer who procures work to be done by a contractor over whose work the employer retains supervision or control is the statutory employer of employees of the contractor and subcontractors under certain circumstances).

## CONCLUSION

¶15 For the foregoing reasons, we affirm the award.

