NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

JA FRAMING, LLC, *Petitioner Employer*,

COPPERPOINT CASUALTY INSURANCE COMPANY, *Petitioner Carrier,*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

AMBROSIO Q. RIVERA, *Respondent Employee*,

LEODEGARIO ORTIZ VALDEZ and CARMEN VALEZ, individually and as husband and wife, *Respondent Uninsured Employers,*

SPECIAL FUND DIVISION/NO INSURANCE SECTION, *Respondent Party in Interest*.

No. 1 CA-IC 20-0035
FILED 4-22-2021

---

Special Action - Industrial Commission
ICA Claim No. 20172-350446
Carrier Claim No. 17C00631
The Honorable Rachel Morgan, Administrative Law Judge

**AFFIRMED**

---

COUNSEL

CopperPoint Casualty Insurance Companies, Phoenix
By John W. Main
*Counsel for Petitioner Employer and Carrier*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Industrial Commission of Arizona, Phoenix
By Afshan Peimani
*Counsel for Respondent Party in Interest*

---

**MEMORANDUM DECISION**

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Judge Cynthia J. Bailey and Judge Lawrence F. Winthrop joined.

---

**M c M U R D I E**, Judge:

**¶1**　　　Petitioners JA Framing, LLC, and CopperPoint Casualty Insurance Company ("JAF") bring this statutory special action appealing an award by the Industrial Commission of Arizona ("ICA") that found JAF responsible for workers' compensation coverage for Respondent Ambrosio Q. Rivera. On this record, we agree JAF was a "statutory employer"[1] of Rivera within the provisions of A.R.S. § 23-902(B), which assigns workers' compensation liability to employers who meet specific statutory requirements concerning injured workers. We, therefore, affirm the award.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　We consider the evidence in a light most favorable to sustaining the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002). JAF is a contractor that does framing work for construction projects. In February 2011, JAF entered a written agreement with Respondent Leodegario Ortiz Valdez ("Ortiz") to do framing work when called upon by JAF. JAF routinely used subcontractors like Ortiz during busy periods when more workers were needed to frame houses. The agreement called for Ortiz to provide labor and tools to perform framing work according to plans and specifications supplied by JAF. It provided for

---

[1]　　　"The term 'statutory employer' refers to one compelled by law to pay compensation benefits to remote employees, i.e., employees of another." *Hunt Bldg. Corp. v. Indus. Comm'n*, 148 Ariz. 96, 98 (App. 1985) (citing *Young v. Env't Air Prods., Inc.*, 136 Ariz. 158 (1983)), *vacated on other grounds*, 148 Ariz. 102 (1986).

weekly progress payments. The progress was to be determined by JAF, and the payment amounts were determined "by piece." The agreement also stated that JAF would provide Ortiz schedules to follow in completing the work. Finally, the agreement provided Ortiz was an independent contractor and was responsible for taxes and "other burdens for [his] workforce." In January 2017, Ortiz completed a "waiver" form for JAF stating that he was an independent contractor, was not entitled to workers' compensation coverage from JAF, and acknowledging that he must maintain workers' compensation coverage for his employees. JAF never asked for verification that Ortiz had such insurance.

¶3             Ortiz hired Rivera to help him with framing jobs for several years before 2017. Sometime before April 7, 2017, Ortiz hired Rivera to do framing work on a project Ortiz was doing as a subcontractor for JAF. On that date, Rivera seriously injured his arm with a saw, eventually requiring surgery and physical therapy. For six months after the injury, JAF paid Rivera an amount in cash equal to half of the weekly wages he had been making from Ortiz. JAF also paid Rivera's physical therapy bills. However, a JAF representative at a later hearing denied paying any amount to Rivera. Text messages between Rivera and JAF's office manager after the injury support Rivera's testimony concerning such payments.

¶4             Rivera filed a worker's report of injury and compensation claim against JAF and Ortiz. Notwithstanding the signed agreement and subsequent waiver document, Ortiz did not carry insurance. In September 2017, JAF and its insurer CopperPoint denied Rivera's claim. Since Ortiz was uninsured, Respondent Special Fund Division/No Insurance Section ("Special Fund") joined as a party in interest. The Special Fund denied the claim without explanation. Rivera requested a hearing, and an ICA administrative law judge ("ALJ") heard testimony from Ortiz, Rivera, JAF's office manager Carol Torres ("Torres"), and JAF's owner Javier Aguilar Perez ("Aguilar"). The issue at the hearing was whether Ortiz or JAF were employers according to A.R.S. § 23-902(B), and, therefore, responsible for workers' compensation coverage for Rivera's injury.

¶5             The testimony at the hearing confirmed that JAF hired Ortiz to perform framing work on a particular construction project; Rivera was hired as a framer by Ortiz for that project; and Rivera was injured while providing such framing services on that job. JAF paid Ortiz for the framing work by check, and Ortiz paid Rivera in cash. The amount of payment to Ortiz was based on weekly progress toward completion. Ortiz did not have workers' compensation coverage for himself or Rivera. Torres and Aguilar testified that JAF relied solely on Ortiz's written acknowledgments

regarding his status as an independent contractor and his responsibility to provide worker's insurance coverage for himself and his employees. JAF never sought verification from Ortiz that he had insurance.

¶6        The testimony revealed that JAF employed supervisors who inspected the framing progress each week before paying Ortiz. They also checked the work quality and the work area's safety. Ortiz was expected to frame according to plans provided by JAF. Ortiz was expected to provide his tools and safety equipment, but he could use JAF's equipment if needed. If Ortiz needed a crane to position framing or trusses, JAF would supply it. JAF did not withhold taxes from payments to Ortiz but provided him with 1099 forms each year, which document payments to hired independent contractors.

¶7        Upon consideration of the evidence, the ALJ found that Ortiz "provided inconsistent, contradictory, and vague testimony regarding whether he owned a framing business, whether [Rivera] worked for him, and other details." She also had doubts about Torres' veracity, especially concerning the text messages and payments to Rivera after the injury.[2] The ALJ concluded that Rivera was an employee of both Ortiz and JAF for workers' compensation coverage purposes. JAF requested an administrative review of the ALJ's Findings and Award, which was summarily denied. JAF filed this special action. No party argues that Rivera was not an employee of Ortiz. The only issue presented is whether, at the time of the injury, JAF was a statutory employer of Rivera.

## DISCUSSION

¶8        In reviewing the findings and awards of the ICA, we defer to the factual findings of the ALJ but review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003). We independently determine whether an injured worker is an employee or an independent contractor based on the totality of facts and circumstances. *Cent. Mgmt. Co. v. Indus. Comm'n*, 162 Ariz. 187, 189 (App. 1989) (citing *Anton v. Indus. Comm'n*, 141 Ariz. 566, 568–69 (App. 1984) (appellate court must make an independent determination of a person's status as an employee or independent contractor)).

---

2        During the hearing, Torres acknowledged that the texts were from her phone number but she denied making them. She claimed she had lost her phone and did not have it at the time of those texts.

¶9            Our independent review of the ALJ's decision that JAF was Rivera's statutory employer is guided by our workers' compensation statutes' remedial purposes. *Anton*, 141 Ariz. at 569. We construe the statutes to effectuate their purpose, which is designed to compensate those injured while working in business and industry. *Id.* This reasoning extends to the concept of an employee and the definition of an employer in workers' compensation law. *Id.; see also Cent. Mgmt. Co.*, 162 Ariz. at 190 ("[T]he definition of employee should be liberally construed.").

¶10           As a preliminary matter, the uncontested evidence in the record demonstrates that Rivera was an employee of Ortiz. To determine whether JAF was a statutory employer of Rivera for purposes of our workers' compensation statutes, we look first to the statutes themselves. A.R.S. § 23-902(B) and (C) provide:

> (B) When an employer procures work to be done for the employer by a contractor over whose work the employer retains supervision or control, and the work is a part or process in the trade or business of the employer, then the contractors and the contractor's employees, and any subcontractor and the subcontractor's employees, are, within the meaning of this section, employees of the original employer. For the purposes of this subsection, "part or process in the trade or business of the employer" means a particular work activity that in the context of an ongoing and integral business process is regular, ordinary or routine in the operation of the business or is routinely done through the business' own employees.

> (C) A person engaged in work for a business, and who while so engaged is independent of that business in the execution of the work and not subject to the rule or control of the business for which the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to that business only in effecting a result in accordance with that business design, is an independent contractor.

¶11           Based on A.R.S. § 23-902(B) and (C), Arizona courts have held "[t]he distinction between an employee and independent contractor . . . rests on the extent of control the employer may exercise over the details of the work." *Cent. Mgmt. Co.*, 162 Ariz. at 189. Accordingly, we consider the "totality of the facts and circumstances of each case, examining

various indicia of control." *Anton*, 141 Ariz. at 571 (quoting *Home Ins. v. Indus. Comm'n*, 123 Ariz. 348, 350 (1979)).

¶12        In *Home Insurance*, the Arizona Supreme Court set out the following factors for determining indicia of control: (1) the duration of employment; (2) the method of payment; (3) who furnishes necessary equipment; (4) the right to hire and fire; (5) who bears responsibility for workers' compensation benefits; (6) the extent to which the employer may exercise control over the details of the work; and (7) whether the work was performed in the usual and regular course of the employer's business. 123 Ariz. at 350. The court further noted that none of these indicia, standing alone, is conclusive. *Id.* Additionally, along with whether the original employer has retained supervision and control, the fact finder must evaluate whether the "work is a part or process in the trade or business of the employer." A.R.S. § 23-902(B).

¶13        Under this statutory framework and applying the appropriately remedial construction of the statute, a statutory employer might have no direct contractual relationship with the injured worker. Instead, that statutory obligation to provide workers' compensation benefits can be imposed as a matter of law based upon the degree of control exercised by the alleged statutory employer over the work performed by either the injured worker or that worker's actual employer. As such, depending on the evidence of control, A.R.S. § 23-902(B) may impose liability if a contractor (here, JAF) retains sufficient control over the work of a subcontractor and the injured worker's actual employer (here, Ortiz). Thus, we focus on the relationship between JAF and Ortiz. Specifically, we must determine whether JAF retained control over Ortiz on the subject project and whether the work Ortiz performed in that regard was a part or process of JAF's trade or business.

¶14        In analyzing and applying these factors, we initially note there is no question that Ortiz and JAF are part of the same general industry (construction), and the framing work supplied by Ortiz is a trade integral to the construction of buildings. Thus, the "type-of-trade-or-business" factor leans heavily in favor of JAF being a statutory employer of Ortiz and his workers. *See Anton*, 141 Ariz. at 572 (if the type of work done "is an *integral* part of the employer's *regular* business," it "bears heavily on the question of whether the [worker] is an employee or an independent contractor") (emphasis added).

¶15        Next, we examine the record evidence of the factors identified by our supreme court in *Home Insurance* for determining whether JAF

retained control over Ortiz as a subcontractor. Here, Ortiz's relationship with JAF was long term, as he had been working for JAF somewhat regularly under a single agreement since 2011, much like an employee. The payment method indicates an employment relationship because Ortiz was paid weekly by progress payments based on the amount of work performed rather than a lump sum per project, which would more likely indicate an independent-contractor relationship. Ortiz was not responsible for providing materials or a completed project but rather provided only labor, much like an employee. Since the agreement between JAF and Ortiz was open-ended (essentially, at the will of both parties), JAF could fire Ortiz from the project at any time, much like an employee. While some of the job details were left to Ortiz, not all of them were. JAF provided plans and specifications, and JAF's supervisors performed periodic inspections to ensure the work was completed safely, was of sufficient quality, and was progressing per the plans and specifications. Finally, as noted, Ortiz's work was the same work performed in the usual and regular course of JAF's trade or business.

¶16         The preceding five factors weigh in favor of finding that JAF retained statutory supervision and control over Ortiz. The two remaining indicia of control tilt in the other direction—toward a finding of independent-contractor status—but only slightly. Ortiz was expected to provide his equipment and tools but could use JAF's if needed. Also, Ortiz acknowledged in writing the responsibility to provide workers' compensation insurance for the benefit of his employees.

¶17         A written agreement and "waiver" signed by Ortiz is not conclusive. The terms of a written agreement between the parties does not control the inquiry into the relationship's nature and the parties' obligations. *Anton*, 141 Ariz. at 568–69 ("[N]either the absence nor the presence of a written contract controls the resolution of the question of whether petitioner was an employee or an independent contractor."). We find this factor to weigh in favor of an independent-contractor status. We note, however, that during the entire six years that Ortiz worked for JAF before the injury to Rivera, JAF failed to require any proof of Ortiz's insurance coverage or licensure as a subcontractor, both of which are standard precautions that would have required only minimal effort on JAF's part. Thus, while two of the factors weigh toward independent-contractor status, the weight they bear is slight compared to the five factors that weigh toward control.

¶18         Another factor we find significant in determining whether Rivera was an employee of JAF is the cash payments JAF made to cover

some of Rivera's lost income and the cost of physical therapy due to the injury. These actions indicate acknowledgment of responsibility for Rivera's damages. We agree with the ALJ that this was a significant factor in determining that JAF was Rivera's statutory employer.

¶19　　　　In summary, we find that JAF retained supervision and control over Ortiz and that Ortiz's work as a subcontractor for JAF was a part of JAF's regular business. Therefore, on this record, JAF was a statutory employer of Rivera.

¶20　　　　JAF and Copperpoint's reliance on *Pruett v. Precision Plumbing, Inc.*, for the proposition that a general contractor's "right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations . . ., or to prescribe alterations and deviations" does not establish sufficient control over a subcontractor is misplaced. 27 Ariz. App. 288, 291–92 (1976) (quotation omitted). That case involved a tort claim from an independent contractor for injuries received while working on a project for general contractors. The quote provided by JAF and Copperpoint is language from the Restatement (Second) of Torts § 414(c) (1965) on "Negligence in Exercising Control Retained by Employer," which the *Pruett* court quoted during its discussion of whether the general contractors negligently retained control of the safety measures on that job. That issue has no bearing on our inquiry here.

## CONCLUSION

¶21　　　　We affirm the ICA award issued in this matter.

