687 P.2d 1285

Joseph MOLNAR, Jr., Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Westco Trucking, Ltd., Respondent Employer,

Insurance Company of North America, Respondent Carrier.

No. 1 CA–IC 2966.

Court of Appeals of Arizona, Division 1, Department D.

June 26, 1984.

Tretschok, McNamara & Clymer, P.C. by Dale D. Tretschok, Tucson, for petitioner.

Sandra Day, Chief Counsel, Indus. Com'n of Arizona, Phoenix, for respondent.

Moore & Long by James B. Long, Phoenix, for respondent employer/respondent carrier.

OPINION

KLEINSCHMIDT, Judge.

The dispositive issue in this special action review of an industrial commission award

is whether the administrative law judge erred in finding that claimant was an independent contractor on the date of injury. Because the evidence does not reasonably support the administrative law judge's conclusion, we set aside the award.

On March 14, 1981, respondent, Westco Incorporated, hired the claimant, Joseph Molnar, as a heavy equipment repair mechanic. Molnar was paid a wage of $10 per hour. When claimant was hired, the parties also agreed that claimant would be compensated if he was required to use his truck. On or about April 4, 1981, claimant requested that his paychecks be issued without any deductions for taxes or workman's compensation contributions. He suggested that they be made payable to Molnar's Maintenance Service. Westco's bookkeeper informed Mr. Curtis Evans, Westco's president, of Molnar's request and Evans approved the manner of payment. Evans and Molnar never discussed the new manner of payment or any changes in Molnar's work status.

On April 10, 1981, Molnar submitted an invoice to Westco for $400 on stationery inscribed "Molnar's Maintenance Service 19437 Dalby, Detroit, Michigan." The invoice indicated that claimant had worked forty hours at $10 per hour. Westco gave claimant a $400 check payable to Molnar's Maintenance Service. This was the only invoice Molnar ever submitted.

On April 17, 1981, Molnar injured himself while repairing paving equipment at Westco. On the same day, Westco issued another $400 check to Molnar's Maintenance Service. On May 1, 1981, Westco issued a final check to Molnar's Maintenance Service in the amount of $80.

Claimant filed a claim for workmen's compensation benefits. The claim was denied and a hearing was conducted on the matter. At the hearing, only Molnar and Evans testified. The administrative law judge issued an award finding that the claimant was an independent contractor and denying him recovery. This special action followed.

■ The relevant statutory guideline in determining whether a worker is an independent contractor or an employee is provided in A.R.S. § 23–902(C):

C. A person engaged in work for another, and who while so engaged is independent of the employer in the execution of the work and not subject to the rule or control of the person for whom the work is done, but is engaged only in the performance of a definite job or piece of work, and is subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor, and an employer within the meaning of this section.

The principal factor to consider in differentiating between an employee and an independent contractor for worker's compensation purposes is whether the employer has retained the right to control or supervise the method or details of reaching a specific result. *Special Fund v. Catalina Trucking Co.*, 134 Ariz. 585, 658 P.2d 238 (App. 1982). In *Home Insurance Co. v. Industrial Commission*, 123 Ariz. 348, 599 P.2d 801 (1979), the supreme court discussed the doctrine of "right of control":

To determine the right to control, courts look to the totality of the facts and circumstances of each case, examining various indicia of control. *Reed v. Industrial Commission of Arizona*, 23 Ariz.App. 591, 534 P.2d 1090 (1975). These indicia, as articulated by the cases, include: the duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work, and whether the work was performed in the usual and regular course of the employer's business.

123 Ariz. at 350, 599 P.2d at 803.

■ Applying these indicia, we conclude that Molnar was Westco's employee at the time of injury. Molnar was initially hired as an employee. At no time after the April 4, 1981 change of the payee's name on

claimant's checks was there any change in Westco's control over claimant's work. Claimant was paid $10 per hour when he began to work for Westco and this hourly rate of payment did not change after April 4, 1981. In contrast, there was evidence that the only independent contractor used by Westco to maintain machinery was paid a lump sum per job.

Molnar did not establish his own hours when he was initially hired and he testified that even after April 4, 1981, he believed he was required to work forty hours per week. There is no evidence that claimant was hired to complete one particular piece of work rather than work on a continuous basis. There was also no indication that claimant's employment duration was limited to a specific piece of work after the pay change. Evans was asked the following question:

> But nothing had changed in regard to the people that he worked with and the people that he took orders from and the hours he worked or anything else?

He answered:

> No. They were basically the same.

Molnar's work as a heavy equipment repair mechanic was an integral part of Westco's regular construction business. Although Evans testified that a repair shop had performed similar work to that performed by claimant approximately a year later, he stated that Westco employed mechanics to maintain machinery as a routine part of its business.

■ Westco also had the authority to exercise control and supervision over claimant's work. That claimant, an experienced workman, was knowledgeable and trusted in his area of expertise and required little supervision does not lessen the ultimate control Westco had over him. It is the right to control, not the exercise of control, which is significant in determining the existence of an employee relationship. *Nochta v. Industrial Commission*, 7 Ariz.App. 166, 436 P.2d 944 (1968). Evans testified that claimant's supervisors had authority to fire him before and after April 4, 1981. Molnar also stated that he believed he could have been fired if he had ignored directions from his supervisors. Evans testified that claimant's supervisors had authority to direct him to repair certain machinery and that this degree of supervision never changed.

■ Molnar provided his own tools, but this was a common practice among experienced mechanics who were employees as opposed to independent contractors. The fact that Westco did not pay for Molnar's workman's compensation is not dispositive. Even where parties agree that a worker take care of withholding taxes, social security, unemployment insurance and "everything else", a worker may still be an employee. *Special Fund v. Catalina Trucking, supra.*

Molnar explained that he requested his paychecks be issued to Molnar's Maintenance Service because that was the only way he could think of to increase his take home pay. According to Evans, the claimant showed Westco's bookkeeper a certificate of registration for his truck, indicating the vehicle was registered to Molnar's Maintenance Service, when he requested the pay change. Regarding the certificate of registration and approval of the new pay arrangement, Mr. Evans testified:

> Q. How was it put to you? How was it submitted to you for your approval?
> A. Daisy had a Certificate for Registration for Mr. Molnar's vehicle that stated that it belonged to Mr. Molnar's Maintenance Service. She asked me if it was all right to pay him as an outside contractor and to do away with the Workman's Comp charges, the Social Security, withholding and all of that type of stuff, and just pay him directly as a contractor. I looked it over and it was perfectly all right with me.

The evidence also fails to indicate that claimant intended to establish an independent business or was actually engaged in a separate calling after April 4, 1981. Molnar admitted that he did no work for other businesses and there was nothing to indi-

cate that he held himself out to the public as one who would repair heavy equipment.

It is obvious that what happened here is that both the employer and the employee sought to change Molnar's status to avoid deductions from his pay. It was a very casual attempt to circumvent the workman's compensation statute. Since the parties did not alter the key factors that define the status of an employee under the workman's compensation law, it was error to find that Molnar was an independent contractor. As the court said in *Grabe v. Industrial Commission*, 38 Ariz. 322, 299 P. 1031 (1931).

> The statute therefore brushes aside all forms and subterfuges and provides that one just, simple and definitive test. If the work be part of the regular business of the alleged employer, does he retain supervision or control thereof? All other matters are of importance only as they throw light on this question.

38 Ariz. at 328, 299 P. at 1034.

It is clear that the administrative law judge believed that Molnar should not be entitled to diminish the compensation fund by subterfuge and then look to that fund for benefits. What this view of the matter does not take into account is that Molnar was not the only one to benefit from the subterfuge. The employer also benefited from not having to contribute to the fund. The agreement to treat Molnar's pay as that of an "independent contractor" was simply illegal. The statute is not so easily subverted.

Award set aside.

HAIRE and OGG, JJ., concur.