828 P.2d 1218

**Marvin R. SWICHTENBERG and Rose Swichtenberg, husband and wife, Plaintiffs–Appellants,**

**v.**

**Jack BRIMER and Jane Doe Brimer, husband and wife, Defendants– Appellees.**

**1 CA–CV 88–532.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 19, 1991.

Review Denied May 5, 1992.*

* Feldman, C.J., of the Supreme Court, voted to grant review.

Schmitt & Associates, P.C. by Peter F. Fisher, Phoenix, for plaintiffs-appellants.

Stinson & Roberts by Edwin R. Roberts, Phoenix, for defendants-appellees.

## OPINION

TAYLOR, Judge.

Marvin R. Swichtenberg appeals from a judgment dismissing his negligence action against defendant Jack Brimer. The parties urge the following issues on appeal: (1) did Brimer's statements to his worker's compensation carrier and at his deposition that Swichtenberg was not his employee estop him from claiming immunity under A.R.S. § 23–1022(A) as Swichtenberg's employer; (2) do genuine issues of material fact exist which would require a trial on

the question whether Brimer was Swichtenberg's employer; (3) did Swichtenberg waive his right to deny he was Brimer's employee by naming Brimer as his employer on his worker's compensation claim; (4) assuming Brimer was Swichtenberg's employer, may Swichtenberg nevertheless pursue a negligence claim against Brimer based on actions and conditions that did not arise from or relate to Brimer's business; and (5) did Brimer lack exclusive possession and control over the skylight through which Swichtenberg fell, and if so, was Brimer thereby protected from liability for allegedly installing the skylight in violation of the Mesa building code. We hold that equitable estoppel cannot be applied to preclude Brimer from contending that the trial court lacked subject matter jurisdiction under A.R.S. § 23–1022(A). We further hold that under the circumstances of this case, the question whether Brimer was protected from tort liability by A.R.S. § 23–1022(A), including resolution of disputed fact issues, was for the trial court to determine, and that the record contains substantial evidence to support the trial court's conclusion that Brimer was protected.

## FACTS AND PROCEDURAL HISTORY

Viewed in the light most favorable to sustaining the judgment, the record reveals the following facts. Beginning in June of 1985 and continuing through the date of the accident that generated this litigation, appellee Jack Brimer engaged in business as the sole proprietor of B & B Associates. As B & B Associates, Brimer provided general management for the homeowners associations connected with Villa Patrician, Country Club Heights, Woodridge Lake and The Landings, all condominium complexes in Maricopa County. As general manager of each association, Brimer was responsible for taking care of the lawns, pools, general upkeep, painting, outside repair work, trees, waterways, accounting and collecting association monthly fees.

Each homeowners association's monthly fees were deposited to its separate checking account. Checks were then written either directly to persons who provided services for the association's benefit or to B & B Associates to reimburse it for expenses incurred on the association's behalf.

Approximately a year and a half before the accident, Swichtenberg told Brimer he would like to have a job painting at the complexes Brimer managed. Brimer and Swichtenberg agreed on wages and other terms, and Swichtenberg began painting approximately fifty townhouses at The Landings. After Swichtenberg finished his painting project at The Landings, Brimer had him paint the garage roofs and trim at Villa Patrician and all 152 units at the Country Club Heights complex. There was no written employment agreement between Brimer and Swichtenberg.

Swichtenberg was paid $7.00 per hour when he painted for the various townhouse associations. Brimer purchased a heavy duty ladder for Swichtenberg's use, and The Landings Homeowners Association paid for it. Brimer also furnished Swichtenberg with painting supplies including paint brushes and paint, which were also paid for by The Landings.

Swichtenberg testified that Brimer would merely tell him what he wanted done, and Swichtenberg would do it. He testified that before his accident he painted part of the buildings at The Landings, and then Brimer sent him to Country Club Estates to finish a painting project previously started at that location. He then returned to The Landings and completed that project.

Brimer testified he tried to control the manner in which Swichtenberg did his work to ensure safety. He testified he told Swichtenberg to watch himself and informed him of any potential problems of which he was aware. Swichtenberg, however, did not get instructions from Brimer each morning when he reported to work.

While Swichtenberg was painting for B & B Associates, he received checks from both B & B and from the individual townhouse associations. All the checks were signed by Brimer, either in his capacity as manager of the various associations or as sole proprietor of B & B Associates. No deductions were taken from Swichtenberg's checks for federal taxes, state taxes

or social security. Brimer testified that the associations looked to B & B to "pick up all employee relationships" and then bill the associations for the gross amounts due. He testified the associations did not want to file the federal taxes and "all of this other stuff associated with having an employee of their own."

During Swichtenberg's tenure, Brimer repeatedly asked him for a certificate of insurance. Swichtenberg kept assuring Brimer he had one, but did not produce it. In late 1985 Swichtenberg spent several months in Texas. Sometime in or before early January of 1986, Swichtenberg returned from Texas and called Brimer, telling him he wanted to go back to painting. Brimer testified that he told Swichtenberg:

... that if he did not give me a certificate of insurance before I would start paying him again that he would have to be under the State Fund to make sure that everyone was covered.

Brimer's testimony continued:

The only thing is that I could not get him to give me a certificate of insurance.
Q. What did you do about that?
A. What did I do? I figured if I had no certificate of insurance that he would have to go under the State Fund as an employee.
Q. Of whom?
A. Of B & B. B & B had carried the workmen's comp for quite a [while], I don't know how long, quite a while, but we had had State Fund for quite a while.
Q. When did you put Marvin on as an employee of B & B?
A. The day of the accident, when he started. Excuse me, the day that he actually started was when it really was.
Q. Started painting at The Landings again?
A. Yes, well whether it was the 7th or 8th or 9th, or whatever it was of January.

Brimer testified there was a fairly large number of two and three bedroom townhouses to be painted at The Landings. He testified he wanted Swichtenberg to paint a three bedroom townhouse and a two bedroom townhouse to see how long they took

and how much paint was used, so that Brimer could estimate the total cost for painting up to fifty more townhouses. The two bedroom townhouse Brimer selected for painting was owned by Brimer personally, as his residence.

Brimer's townhouse included a jacuzzi in a small patio area. After Brimer moved in, he enclosed the patio area and had a skylight installed over the jacuzzi. These improvements were not made as part of Brimer's job as manager of The Landings, but were improvements personally constructed and for his private use.

On January 10, 1986, Swichtenberg started painting Brimer's townhouse. After painting a portion of the outside walls, he climbed the ladder to the top of the building to paint the parapet wall. As he moved off the ladder and onto the roof, he stepped through the skylight and fell into the jacuzzi, suffering injuries.

After the accident, Swichtenberg filed a worker's compensation claim naming "B & B Assoc.—Jack Brimer and Assoc." as his employer. On January 27, 1986, a representative of the State Compensation Fund contacted Brimer concerning Swichtenberg's accident. At that time Brimer indicated Swichtenberg had not returned to work but might return to work in two to three weeks. Brimer did not question the validity of Swichtenberg's claim. On January 30, 1986, the Fund mailed Swichtenberg a notice of claim status indicating that his claim against B & B Associates had been accepted for benefits. It informed him that the notice would become final if he did not apply for a hearing within 90 days.

On March 25, 1986, at the request of a representative of the liability carrier for The Landings Homeowners Association, Brimer wrote to the Fund as follows:

There has been an error made concerning the State Fund Insurance workman's compensation for Marvin Swichtenberg, Sr. due to the fact that he was an employee of The Landings Homeowners Association for 3 days prior to the accident

and in the confusion the claim was turned in under B & B Associates.

The claim should have been made under The Landings' Homeowners Association policy # 147149–9 instead of B & B Associates policy # 147141–6.

Mr. Lou Ferguson of the Claims Department of Farmers Insurance Company requested that I write you this letter, to straighten this matter out.

After Brimer's letter of March 25, 1986 was received, the Fund transferred the charges for Swichtenberg's accident from the B & B Associates policy to The Landings Homeowners Association's policy.

In a 1986 deposition, Brimer testified that Swichtenberg was employed by The Landings when he was injured. In a 1988 deposition, however, Brimer testified that Swichtenberg was made an employee of B & B Associates just prior to the accident and that The Landings had no employees when Swichtenberg was injured.

Swichtenberg's affidavit in the trial court stated in part:

1. When I was hired to paint at The Landings in January of 1986, my understanding was that I was being hired by The Landings, that is, by the property owners' association. I had understood I would receive a paycheck from The Landings and then allow Jack Brimer to take out the rent he charged me for use of his spray gun.

2. When I was hired by Jack Brimer to work for The Landings it was on an at will basis. Mr. Brimer as manager of The Landings, could fire me; and I could quit any time for any reason.

3. In January of 1986, I was instructed to paint two townhouses and report to Mr. Brimer, after completion of the job, how much paint was used and how long it took to complete the job. No further instructions were given to me by Mr. Brimer. I completed the job based on my own experience and knowledge, using the most effective method of paint application for the particular job. Mr. Brimer never inquired as to the type or method of application, i.e., paint brush or spray gun. I never discussed my methods of painting with Mr. Brimer and always decided how to get the job done after Mr. Brimer gave me the location of the job.

On March 20, 1986, Swichtenberg filed this negligence action against Brimer. Brimer filed a "Motion to Dismiss or for a Directed Verdict," arguing that as Swichtenberg's employer he was immune from tort liability. Swichtenberg supported his response with a statement of facts citing to the record. Brimer's reply in support of his motion was also accompanied by a statement of facts citing to the record. Without elaboration, the trial court granted Brimer's motion to dismiss. This timely appeal followed entry of formal judgment in accordance with the trial court's ruling. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

## DISCUSSION OF ISSUES

### Estoppel

Swichtenberg asserts that Brimer's letter of March 25, 1986 to the State Compensation Fund and his 1986 deposition testimony induced Swichtenberg to believe that Brimer would take the position that he was employed by The Landings and not Brimer when he was injured. Swichtenberg says this caused him to refrain from amending his complaint to include The Landings as a defendant, which resulted in the expiration of the statute of limitations on any claim he might have had against The Landings. Swichtenberg contends that Brimer should therefore be estopped to assert that he was Swichtenberg's employer. In response, Brimer argues that Swichtenberg never changed his position during the time the statute was running and therefore has failed to make out a proper case of estoppel.

Before we examine Swichtenberg's claim of estoppel, we deem it appropriate to address the determinant issue of jurisdiction. A.R.S. § 23–1022(A) provides in pertinent part:

The right to recover compensation pursuant to this chapter for injuries sustained by an employee or for the death of an employee is the exclusive remedy

against the employer or any co-employee acting in the scope of his employment....

The superior court lacks subject matter jurisdiction in a tort action against an employer by an employee injured in the course of his employment. *Ringling Bros. & Barnum & Bailey Combined Shows, Inc. v. Superior Court,* 140 Ariz. 38, 680 P.2d 174 (App.1983); *Chesin Construction Co. v. Epstein,* 8 Ariz.App. 312, 446 P.2d 11 (1968). Subject matter jurisdiction cannot be waived, and can be raised at any stage of the proceedings. *Rojas v. Kimble,* 89 Ariz. 276, 361 P.2d 403 (1961). Similarly, it is settled that

> ... [j]urisdiction of the subject matter cannot be conferred upon a court by, or be based on, the estoppel of a party to deny that it exists.

21 C.J.S. *Courts* § 108, at 161. *Accord* 20 Am.Jur.2d *Courts* § 95, at 455.

*Was Brimer Swichtenberg's Employer?*

Swichtenberg urges that the evidence before the trial court presented genuine issues of material fact concerning whether Brimer was Swichtenberg's employer at the time of his injury. He also urges that there were genuine issues of material fact concerning Brimer's control of Swichtenberg's work and whether painting was a "part or process" of Brimer's trade or business. He argues that the court therefore erred in its finding that Brimer was Swichtenberg's "statutory employer" under A.R.S. § 23–902(B).

■ We cannot agree with Swichtenberg's analysis. Where jurisdictional fact issues are not intertwined with fact issues raised by a plaintiff's claim on the merits, the resolution of those jurisdictional fact issues is for the trial court. In resolving such issues the trial court may consider affidavits, depositions and exhibits, and does not thereby convert a motion to dismiss for lack of jurisdiction to one for summary judgment. *Bonner v. Minico, Inc.,* 159 Ariz. 246, 253–54, 766 P.2d 598, 605–06 (1988); *Gatecliff v. Great Republic Life Insurance Co.,* 154 Ariz. 502, 506, 744 P.2d 29, 33 (App.1987). In this case any

fact issues material to the question of whether Swichtenberg was Brimer's employee were distinct from the allegations of particular facts upon which Swichtenberg based his claim that Brimer was negligent. Accordingly, even assuming the materials submitted to the trial court raised genuine issues of material fact concerning subject matter jurisdiction, the court was free to proceed on its own to determine them.

We therefore view the record in the light most favorable to sustaining the trial court's ruling. We may infer any necessary findings that are reasonably supported by the evidence. *Thomas v. Thomas,* 142 Ariz. 386, 690 P.2d 105 (App.1984); *Arizona Laborers, Teamsters and Cement Masons Local 395 Health and Welfare Trust Fund v. Hatco, Inc.,* 142 Ariz. 364, 690 P.2d 83 (App.1984). We review the trial court's ultimate legal conclusion de novo. *See Anton v. Industrial Comm'n,* 141 Ariz. 566, 688 P.2d 192 (App.1984). In doing so, we take into account that it was Swichtenberg's burden to demonstrate the existence of jurisdiction. *See Ringling Bros. & Barnum & Bailey Combined Shows, Inc. v. Superior Court,* 140 Ariz. 38, 680 P.2d 174 (App.1983).

■ In Arizona, the right to control or supervise the method of reaching a specific result determines whether an individual is an employee or an independent contractor. *Home Insurance Co. v. Industrial Comm'n,* 123 Ariz. 348, 599 P.2d 801 (1979).

> To determine the right to control, courts look to the totality of the facts and circumstances of each case, examining various indicia of control. [Citation omitted.] The indicia, as articulated by the cases, include: the duration of the employment, the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work; and whether the work was performed in the usual and regular course of the employer's business. [Citations omitted.]

In undertaking an analysis none of the indicia is, in itself, conclusive.

*Home Insurance Co. v. Industrial Comm'n,* 123 Ariz. at 350, 599 P.2d at 803. *Accord Central Management Co. v. Industrial Comm'n,* 162 Ariz. 187, 781 P.2d 1374 (App.1989); *Dalton v. Superior Court,* 153 Ariz. 494, 738 P.2d 365 (App. 1987); *Anton v. Industrial Comm'n,* 141 Ariz. 566, 688 P.2d 192 (App.1984); *Molnar v. Industrial Comm'n,* 141 Ariz. 530, 687 P.2d 1285 (App.1984). The parties' own subjective beliefs or opinions concerning the nature of their relationship are immaterial. *Nation v. Weiner,* 145 Ariz. 414, 419, 701 P.2d 1222, 1227 (App.1985); *Anton v. Industrial Comm'n,* 141 Ariz. at 568, 688 P.2d at 194. Neither the presence nor the absence of a written contract controls the resolution of whether the claimant is an employee. *Anton* at 568, 688 P.2d 192.

This court recently indicated that the determination of the right to control is actually delimited by the question of whether the work is part of the employer's regular business or operation. *Anton v. Industrial Comm'n,* 141 Ariz. at 571–72, 688 P.2d at 197–98. In his treatise on workman's compensation law, Professor Arthur Larson has noted that employment can often be solidly demonstrated on the strength of one of four factors: (1) evidence of actual control exercised by the "employer" and submitted to by the "employee;" (2) the method of payment, whether on a time, piecework or commission basis, or on a completed project basis; (3) whether the "employer" furnishes the "employee" with valuable equipment; and (4) whether the "employer" has the right to terminate the relationship without liability. 1C A. Larson, *Workmen's Compensation Law* §§ 44.30 through 44.35.

■ The facts relating to the employment relationship of the parties is not seriously disputed. The proper conclusion to be drawn from those facts forms the essence of the dispute before us. The facts as presented to the trial court show that Swichtenberg and Brimer's relationship continued over a period of a year and a half, subject to some interruptions.

Swichtenberg performed painting jobs at all the condominium complexes that Brimer managed. He was paid by the hour, not by the job. Brimer furnished all Swichtenberg's equipment and supplies. It was Brimer alone who decided which complex Swichtenberg would paint, and on occasion interrupted one project to have Swichtenberg work elsewhere. Brimer gave Swichtenberg specific directions concerning the very job on which Swichtenberg was injured—he was to paint two townhouses and report to Brimer on how much time and paint the job took. Brimer also provided worker's compensation insurance coverage that was available to Swichtenberg.

We find that all the key indicia point to Brimer's right to control Swichtenberg. Finally, Brimer testified that his business as manager of four homeowners associations included responsibility for painting. Swichtenberg therefore performed his work, which was limited to painting, in the usual and regular course of Brimer's business. In our opinion, the trial court correctly concluded that Brimer was Swichtenberg's employer.

*The Dual Capacity—Dual Persona Doctrine*

■ Swichtenberg asserts that the essence of his case is that Brimer maintained an unsafe condition at his personal residence. He notes that this condition was not related in any way to Brimer's business, but arose out of Brimer's improvement of his personal residence in alleged violation of the City of Mesa building code. Swichtenberg urges us to apply the "dual capacity" doctrine and hold that Brimer is subject to negligence liability despite the employer-employee relationship existing between the parties.

We have previously stated:
[T]he so-called "dual capacity" doctrine permits an employer, normally shielded from tort liability by the exclusive remedy principle, to become liable in tort to his own employee if he acts, in addition to his capacity as an employer, in a second capacity conferring on him obligations independent of those as an em-

ployer. *Robbins v. Seekamp*, 122 N.H. 318, 444 A.2d 537 (1982).

. . . .

Our legislature has clearly stated that if a worker does not reject the compensation scheme, compensation benefits are "the exclusive remedy against the employer." A.R.S. § 23–1022(A). The dual capacity doctrine not only conflicts with this express statute but subverts the legislature's purpose in enacting the exclusive remedy provision.

*Hills v. Salt River Project Association*, 144 Ariz. 421, 425, 698 P.2d 216, 220 (App. 1985). Although in *Hills* we noted that we did not "totally reject the dual capacity doctrine for all purposes," *id.* at 426, 698 P.2d at 221, we see no reason to hold that it should apply here.

Swichtenberg was engaged in the regular, ordinary and routine work of his employer at the time and place of the accident. It was exactly the same work Swichtenberg did for Brimer over the preceding year and a half. We focus our attention upon the skylight to determine if the construction and maintenance of that allegedly dangerous condition by Brimer the homeowner now gives rise to a cause of action in tort in addition to the claim under Workmen's Compensation against Brimer the employer. In the absence of Arizona cases presenting similar factual and legal issues, an examination of cases from other jurisdictions and a review of the rise and decline of the dual capacity doctrine will be useful.

In his previously mentioned treatise, Professor Larson makes the following observation of the history and status of dual capacity:

The dual capacity doctrine, in spite of widespread and varied attempts to invoke it as a way to defeat exclusiveness, flourished in only two states, Ohio and California, and even there for only a few years, from 1977 to 1983. 2A § 72–81(c), pp. 14–236.

The same treatise also contains the following:

An employer may become a third person, vulnerable to tort suit by an employee, if—and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person.

*Larson*, pp. 14–229.[1]

One of the earliest cases to play prominently in the development of the dual capacity doctrine was *Duprey v. Shane*, 39 Cal.2d 781, 249 P.2d 8 (1952). Plaintiff Duprey, a nurse working for a partnership of chiropractic doctors, was injured in the course of her employment. Those same doctors treated Duprey, resulting in new and aggravated injuries. The California court, in holding the doctors liable in their roles as treating physicians, observed: "In treating the injury Dr. Shane did not do so because of the employer-employee relationship, but did so as an attending doctor, and his relationship to * * * [plaintiff] was that of doctor and patient." 249 P.2d at 15.

The Ohio Supreme Court first embraced the dual capacity doctrine in a case similar in its facts to *Duprey*. In *Guy v. Arthur H. Thomas Co.*, 55 Ohio St.2d 183, 378 N.E.2d 488 (1978), plaintiff, a laboratory technician employee of the defendant hospital, contracted mercury poisoning in the course of her employment. Plaintiff brought suit alleging medical malpractice for injuries received while confined in the hospital for treatment. Finding that the employer-hospital occupied a second or dual capacity as an administering hospital, the court held that this second capacity conferred upon the hospital traditional obligations toward plaintiff which were unrelated to and independent of those imposed upon it as an employer. The court concluded that plaintiff's claim was not barred by Ohio's Workers' Compensation Law.

As stated in *Larson, supra*, the dual capacity doctrine flourished only in California and Ohio. In 1982, the doctrine was

---

**1.** Professor Larson finds the term "capacity" to be susceptible to much confusion and offers the term "persona" to define the second independent and unrelated role assumed by the employer. *Larson*, pp. 14–229–231.

abolished by the California legislature.[2] In 1983, the Ohio Supreme Court declined to apply the doctrine in *Freese v. Consolidated Rail Corp.*, 4 Ohio St.3d 5, 445 N.E.2d 1110.

In *Freese*, plaintiff, a city police officer, was injured in the course of his employment when his motorcycle struck a hole in a city street. His suit against the city alleged negligence in the maintenance of the street. From the allegations of plaintiff's complaint, the court concluded the city-employer would be liable only if it … "had occupied a 'dual capacity' to the employee *at the time of the accident.*" *Freese*, 445 N.E.2d at 1112. [Emphasis supplied.] The Ohio Supreme Court examined cases from other courts and found that the determinant issue was expressed in terms of … "whether the employment relationship is incidental to the injury, or whether the employment relationship predominates in the circumstances surrounding the incident giving rise to the complaint." The court then stated:

Whatever the test applied to determine the status of the party claimed to owe an obligation, be it based upon a consideration of whether there exists an unrelated or independent relationship of the parties other than employer and employee, or based upon a test of whether the employment relationship is incidental or predominant, the same result may be reached. In either approach, what must be determined is *whether the employer stepped out of his role as such, and had assumed another hat or cloak.* If the facts would show the latter, the employer has accordingly assumed another capacity and also *has assumed independent obligations to his employee unrelated to the obligations arising out of the employer-employee relationship.* *Freese*, 445 N.E.2d at 1114. (Emphasis supplied.)

The court found that plaintiff, *at the time of the accident,* was performing his duties as a motorcycle officer, and that those duties required him to travel the city's streets in the regular course of his employment. The court further found that at all times relevant to the issues of the case the city was the plaintiff's employer and that no other independent and unrelated relationship had arisen between the two. The court held that plaintiff's exclusive remedy was via Worker's Compensation.

We note in *Duprey* and *Guy* that at the time the malpractice injuries occurred, the plaintiffs had stepped out of their roles as employees and had assumed a different dominant role or persona as patients. While it is true plaintiffs remained employees during the course of treatment, it was not their primary role at the time of the additional injury. Defendants likewise, at the time of the malpractice injuries, had assumed as their dominant role or relationship toward their respective plaintiff that of health care provider. The status of employer was a minor role and of no significance in causing the new injuries.

*Freese*, with facts more akin to the case before us, presents a different roles and relationship situation and leads to a different result. In *Freese*, at the time of injury, the dominant role of plaintiff in his relationship to the city was that of employee. He never stepped out of that role to his injury. He was also a member of the public and a resident of the city. Those, however, were not the roles that put him on a motorcycle on the city streets at the time of injury.

Likewise, the city, in *Freese*, had not stepped out of its role of employer at the time of plaintiff's injury. The role of employer was the predominant role or relationship then existing in the interaction between the city and plaintiff.

So it was also with Swichtenberg and Brimer. Swichtenberg was at Brimer's residence because he was an employee of Brimer and his employer had told him to be there. That was where his work was to be performed. Swichtenberg was not there in any social or business invitee capacity. He was there as an employee and only as an employee at the time of his injury.

**2.** Assembly Bill No. 684 sec. 6, amending § 3602  of the Labor Code.

Brimer likewise maintained his role of employer to Swichtenberg. He had not invited Swichtenberg, as a member of the public, to visit his residence. Brimer was not performing as host to a social event or in any other non-employer role. He directed Swichtenberg to his place of residence to perform work for which Swichtenberg would be paid. No relationship other than employer-employee predominated between the parties at the time Swichtenberg's cause of action arose. No other persona was present.

Similar conclusions have been reached by courts in other jurisdictions. In *Royster v. Montanez*, 134 Cal.App.3d 362, 184 Cal. Rptr. 560 (1982), plaintiff, a secretary and girl "Friday" in defendant's business, went to defendant's private residence to consult with him about the payment of a utility bill owed by the business. As plaintiff left defendant's home, she stepped into a hole and was injured. In rejecting plaintiff's dual capacity arguments, the California Court of Appeals stated: "[W]e conclude that defendant's liability at law cannot be premised upon the unsafe condition of his residence *which premises became plaintiff's place of employment by virtue of her errand.*" (Emphasis supplied.) *Id.* 184 Cal.Rptr. at 566.

In the instant case, it is noted that the area of the skylight did not become plaintiff's place of employment by an extension theory. By virtue of B & B's maintenance contract with the homeowners association, the premises were in fact the work site both at the time the skylight was constructed and at the time of plaintiff's injury.

*Jansen v. Harmon*, 164 N.W.2d 323 (Iowa 1969) presented a similar situation. Plaintiff, an employee at defendant's auto-parts store, was directed by defendant to go to an apartment building owned by defendant to obtain some items belonging to the auto-parts store. Plaintiff was injured when a wooden post fell down the elevator shaft as he was standing on the freight elevator. In holding that Workers' Compensation Act provided plaintiff's exclusive remedy, the Iowa Supreme Court observed:

Louie Katzman, possessor of the Booth [apartment] building ..., is not a distinct and separate entity from Jansen's employer, Louie Katzman who conducts business under the trade name National Auto Parts Company. As owner of the building he is not a person other than Jansen's employer against whom plaintiffs may maintain an action as contemplated by section 85.22.

*Id.* at 328. The Iowa court quoted the following from *Williams v. Hartshorn*, 296 N.Y. 49, 69 N.E.2d 557 (1946).

Regardless of his status as owner of the premises where the injury occurred, an employer remains an employer in his relations with his employees as to all matters arising from and connected with their employment. He may not be treated as a dual legal personality, 'a sort of Dr. Jekyl and Mr. Hyde.'

*Jansen* at 328.

Likewise, an employee who was injured while working on the roof of a house owned by his employer, and who obtained recovery under the Workers' Compensation Act, could not maintain an action against the owner employer for alleged violation of the Structural Work Act. The court emphasized "the long standing prohibition against dual recovery under the Workmen's Compensation Act and the Structural Work Act against a single entity." *Kim v. Raymond*, 44 Ill.App.3d 37, at 38, 3 Ill.Dec. 34 at 35, 358 N.E.2d 34 at 35 (1976). See also *Walker v. Berkshire Foods, Inc.*, 41 Ill.App.3d 595, 354 N.E.2d 626 (1976) and *Schmid v. U.S.*, 826 F.2d 227 (3d Cir.1987).

The dissent traces "the trajectory of Brimer's negligence" leading to Swichtenberg's injury. This analysis, in our view, misses the mark. Brimer's alleged negligence in installing and maintaining the skylight cannot obscure his role as Swichtenberg's employer at the time Swichtenberg's cause of action arose any more than, as in *Freese*, the continuing negligence of the city in failing to properly maintain the streets could predominate over its role as employer at the time of plaintiff's injury.

In the gunshot hypothetical offered by the dissent, we assume for purposes of

discussion that Brimer had stepped out of his role as Swichtenberg's employer *at the time of Swichtenberg's injury.* That fact, however, only further illustrates that in this case Brimer had stepped back into the role of employer at the time of injury.

The dissent suggests this to be that rare case in which the doctrine of dual capacity may properly be applied. If the facts of this case give rise to the doctrine, we believe that calculation of rarity to be in error. Hereafter, every employer who contributes as capital or who lends his personal tools, equipment or vehicles to his business would be at risk. Every builder who has his employees perform work on his private residence or mountain cabin would be exposed to tort liability. If the relationship of the parties at the time of the alleged negligent act is the focal point, every individual's shop, barn, garage or other personally owned building converted to a work place could subject the employer to personal liability for pre-existing conditions that contribute to an employee's injury.

We do not believe this to be the law. The crucial focal point is the dominant relationship of the parties at the time of injury. If at that point in time, the dominant relationship is that of employer-employee, we believe the benefits received by each party under the provisions of Workers' Compensation provide a sufficiently just and predictable result. We believe the observation of the Supreme Court of Alaska to be appropriate to our case. "It would be an enormous, and perhaps illusory, task to draw a principled line of distinction between those situations in which the employee could sue and those in which he could not. The exclusive liability provision would, in any event, lose much of its effectiveness, and the workmen's compensation system as a whole might be destabilized." *State v. Purdy,* 601 P.2d 258, 260 (Alaska 1979).

Addressing claimant's concern about which business should have immunity, it is noted that federal, state and Arizona cases reflect that immunity from suits in tort is not limited to one employer, but may extend to more than one employer of an individual, to general and subcontractors simultaneously, to special employers, to joint venture employers, partners and others. So long as each employer could be reached by the employee on a workmen's compensation claim, then each employee may enjoy tort immunity if such employer does not fall within some exception. *See Lamb v. W-Energy,* 663 F.Supp. 395 (D.Utah 1987); *Lindsey v. Bucyrus-Erie,* 161 Ariz. 457, 778 P.2d 1353 (App.1989); *Nation v. Weiner,* 145 Ariz. 414, 701 P.2d 1222 (App.1985); *Hoffman v. National Mach. Co.,* 113 Mich.App. 66, 317 N.W.2d 289 (1982); *Conner v. El Paso Natural Gas Co.,* 123 Ariz. 291, 599 P.2d 247 (App. 1979); *Chesin Construction Co. v. Epstein,* 8 Ariz.App. 312, 446 P.2d 11 (1968).

Immunities granted by the Workers' Compensation Act are destructive of the jurisdiction of the Superior Court in a covered employee injury case. *Chesin* at 315, 446 P.2d 11. We find that the facts in this case sufficiently indicate an employee, employer relationship and no exceptions that rise to the level of a disputable issue for the trier of fact. The trial court correctly concluded from the available evidence that defendant Brimer was protected from tort liability.

*Remaining Issues*

Our conclusion that the trial court correctly determined that it lacked subject matter jurisdiction to entertain this tort action against Brimer makes it unnecessary for us to reach Brimer's argument that he could not have been held liable in negligence because he did not have exclusive possession and control over the area of the premises at which the injury occurred. Similarly, we need not consider the merits of Swichtenberg's claim of equitable estoppel, nor do we determine whether Swichtenberg, by filing a worker's compensation claim against Brimer and accepting benefits from the State Compensation Fund, waived the right to assert that he was Brimer's independent contractor.

For the reasons set forth herein, the judgment of the trial court is affirmed.

BROOKS, P.J., concurs.

FIDEL, Judge, dissenting:

I respectfully dissent from my colleagues' conclusion that defendant Jack Brimer may claim employer immunity in this suit. I believe this to be a rare case in which the dual capacity doctrine can be properly applied.

To explain this view, I will first hypothesize a different case—one on which my colleagues and I would probably agree. Suppose that an accident, otherwise identical to this one, occurred on the roof of Brimer's place of business, and was attributable to an allegedly negligent skylight installation that Brimer had accomplished as proprietor of B & B Associates. In such a case, I would agree, Brimer's role as landowner would not constitute a separate capacity or persona that would permit him to be sued. As the Court of Appeals of New York has stated:

> Employers are expected to provide their employees with a safe workplace that is reasonably free of hazards. This obligation to provide a safe workplace simply cannot be separated in a logical and orderly fashion from the duties owed by the employer to his employees by reason of his ownership of the premises or his manufacture of the equipment with which the employees must work. Indeed, these duties are merely subcategories within the complex of obligations that arise in connection with the employment relation.

*Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152, 160, 412 N.E.2d 934, 939, 432 N.Y.S.2d 879, 884 (1980).

> Similarly, Professor Larson has stated: An employer, as part of his business, will almost always own or occupy premises, and maintain them as an integral part of conducting his business. If every action and function connected with maintaining the premises could ground a tort suit, the concept of exclusiveness of remedy would be reduced to nothingness.

2A A. Larson, *The Law of Workmen's Compensation* § 72.82 (1990).

This reasoning, however, is rooted in the duty to provide a safe workplace, and does not extend to immunize an employer from liability arising from a condition of his private, residential premises. Although immunity properly attaches to the constellation of duties one owes *as an employer* to avoid exposing one's employees to unreasonable risks of harm, this immunity does not envelop the employer like a bubble as he passes from the workplace into private life.

Suppose, to take another example, that Swichtenberg had arrived, as here, to paint Brimer's townhouse roof, but at a moment when Brimer was sitting in his kitchen cleaning a gun. Suppose that Brimer had neglected to unload the gun, that he accidentally discharged it toward the roof, and that the bullet struck and injured Swichtenberg. I do not believe employer immunity would apply, even though Swichtenberg's employment placed him in the trajectory of Brimer's negligence. The proper focus of inquiry, in my view, is not on the employee's pathway to exposure, but on the liability-generating conduct of the employer.[3] Because Brimer, in this hypothetical, does not act in the role of employer *and because the risk he negligently generates is not a risk relating to employment*, immunity, in my view, does not attach.

The test of separate capacity—or persona to use Larson's term—has been well-stated by the Supreme Court of Ohio:

> [W]hat must be determined is whether the employer stepped out of his role as such, and assumed another hat or cloak. If the facts would show the latter, the employer has accordingly assumed another capacity and also has assumed independent obligations to his employee unrelated to the obligations arising out of the employer-employee relationship.

---

**3.** The majority stresses that the plaintiff came to the worksite in the capacity of employee. However, in every purported dual capacity case, the plaintiff will have taken an employment pathway to exposure; otherwise, the dual capacity issue will not arise. To distinguish those cases in which the doctrine applies from those in which it does not, inquiry must focus not on the capacity of the worker at the time of injury but on the capacity of the employer at the time the liability-generating conduct occurs.

*Bakonyi v. Ralston Purina Co.*, 17 Ohio St.3d 154, 157, 478 N.E.2d 241, 244 (1985) (quoting *Freese v. Consolidated Rail Corp.*, 4 Ohio St.3d 5, 11, 445 N.E.2d 1110, 1114 (1983)).

This test distinguishes the two hypothetical cases described above. The risk negligently generated in the gunshot hypothetical does not arise from Brimer's role as an employer. Nor does the neglected duty lie "within the complex of obligations that arise in connection with the employment relation." *Billy*, 51 N.Y.2d at 160, 412 N.E.2d at 939, 432 N.Y.S.2d at 884. Rather, in this hypothetical instance, to paraphrase *Bakonyi*, Brimer can be said to have "stepped out of his [employer] role ..., [to have] assumed another hat or cloak ..., [and to have] assumed independent obligations to his employee unrelated to the obligations arising out of the employer-employee relationship." 17 Ohio St.3d at 157, 478 N.E.2d at 244.

The same may be said in the present case. We must assume for summary judgment purposes that Brimer installed his townhouse skylight in a manner that failed to satisfy the applicable code. This installation created a trajectory of risk, just as the hypothetical gunshot created a trajectory of risk; and here, as there, plaintiff's employment led him into the pathway of that risk. Here again, however, as in the gunshot hypothetical, Brimer acted in his private role as homeowner, not employer, at the time of the liability-generating conduct; and Brimer created a danger to any painter, tree-trimmer, air-conditioning repairman, handyman, or guest who might traverse his roof, a danger wholly unrelated to the complex of duties Brimer owed his business employees.

The majority reasons that Brimer's townhouse was a B & B worksite as to Swichtenberg and that this case accordingly may be resolved on the ground of employer immunity for worksite conditions. This reasoning, in my view, neglects the distinctions between this case and the first hypothetical above. Here Brimer was acting in the role of homeowner, not workplace premises manager, at the time that he negligently installed the skylight, and *the actionable risk that he created by that act* was wholly unrelated to employment.

I conclude with a comment on the general validity of the dual capacity doctrine. The majority states that it does not "totally reject the dual capacity doctrine for all purposes," but that the doctrine "subverts the legislature's purpose in enacting the exclusive remedy provision." At 1225, *quoting Hills v. Salt River Project Ass'n*, 144 Ariz. 421, 425, 426, 698 P.2d 216, 220, 221 (App.1985). I think this statement overbroad.

An employer who provides workers' compensation coverage achieves tort immunity in return. This immunity is not limitless, however; it extends only to "the complex of obligations that arise in connection with the employment relation." *Billy*, 51 N.Y.2d at 160, 412 N.E.2d at 939, 432 N.Y.S.2d at 884. The function of the dual capacity doctrine, if carefully applied, is to define the limits of immunity, not subvert them.

The courts are constitutionally obliged to perform this definitional task. By accepting workers' compensation coverage in Arizona, a worker surrenders the constitutional right to pursue tort remedies against the employer. *Anderson v. Industrial Comm'n of Ariz.*, 147 Ariz. 456, 711 P.2d 595 (1985).[4] This surrender, however, occurs only within limits that the dual capacity doctrine serves to define. Courts must be careful not to apply the doctrine so uncritically as to dilute the exclusivity benefit of the employer's bargain. But we must not so shrink from critical application

---

4. Ariz. Const. art. 18, § 6, provides: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."
   Ariz. Const. art. 18, § 8, provides: "The Legislature shall enact a Workmen's Compensation

Law ... by which compensation shall be required to be paid ...; provided that it shall be optional with any employee ... to settle for such compensation, or to retain the right to sue said employer ... as provided by this Constitution."

that we ignore the limits to what Arizona workers have bargained away.