NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AJF CUSTOM HOMES, *Petitioner*,

TRAVELERS PROPERTY CASUALTY CO OF AMERICA,
*Petitioner Carrier*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

JOSE QUINTERO, *Respondent Employee*,

WILDERNESS DEVELOPMENT, INC. / ADRIAN RUCOBO, SR.,
*Respondent Employers*,

HARTFORD UNDERWRITERS, INC., *Respondent Carrier*,

SPECIAL FUND DIVISION, NO INSURANCE SECTION,
*Respondent Party in Interest.*

No. 1 CA-IC 14-0033
FILED 3-12-2015
AMENDED PER ORDER FILED 3-18-15

Special Action - Industrial Commission

ICA Claim No. 20122-850675*
20130-390104***
20130-560307**

Carrier Claim No. 127-CB-EPE8201R*
NONE ***
YZS50670C**

Joseph L. Moore, Administrative Law Judge

**AWARD SET ASIDE**

---

COUNSEL

Klein, Doherty, Lundmark, Barberich & LaMont, P.C., Phoenix
By R. Todd Lundmark
*Counsel for Petitioner and Petitioner Carrier*

Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Lewis, Brisbois, Bisgaard & Smith, LLP, Phoenix
By Greg S. Como, Dane D. Dodd
*Counsel for Respondent Employer and Respondent Carrier*

Special Fund Division/No Insurance Section, Phoenix
By Kathryn E. Harris
*Counsel for Respondent Party in Interest*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Maurice Portley joined.

---

**T H O M P S O N**, Judge:

**¶1**        This is a special action review of an Industrial Commission of Arizona ("ICA") award and decision upon review for a compensable claim. One issue is presented on appeal: whether the administrative law judge ("ALJ") erred by finding that the petitioner, AJF Custom Homes ("AJF"), was the respondent employee's ("claimant's") statutory employer. Because we find that the ALJ committed legal error, we set aside the award.

### I. JURISDICTION AND STANDARD OF REVIEW

**¶2**        This court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(2) (2003), 23-951(A) (2012), and Arizona Rule of Procedure for Special Actions 10 (2009).  We consider the

evidence in the light most favorable to upholding the award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002). In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, *Young v. Industrial Commission,* 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003), but review the ALJ's ruling concerning the claimant's employment status de novo as an issue of law. *Vance Int'l v. Indus. Comm'n,* 191 Ariz. 98, 100, ¶ 6, 952 P.2d 336, 338 (App. 1998).

## II. PROCEDURAL AND FACTUAL HISTORY

**¶3** On September 29, 2012, the claimant fell seven feet from a scaffolding and injured his right arm, right knee, and head. At the time of his fall, he was working on a crew stuccoing the outside of a custom home being built by AJF. He filed workers' compensation claims against Adrian Rucobo, Sr., the foreman of the stucco crew (ICA Claim #20130-390104), Wilderness Development, the stucco subcontractor (ICA Claim # 20130-560307), and the general contractor AJF (ICA Claim #20122-850675). All three claims were denied for benefits, and the claimant timely requested an ICA hearing.[1]

**¶4** The ALJ held one consolidated hearing for all three claims and heard testimony from the claimant, his wife, Rucobo, Wilderness Development's owner, Terry Walker, and AJF's owner, Alan Fernandez. The parties filed post-hearing memoranda, and the ALJ entered an award for a compensable claim against AJF. AJF requested administrative review, and the ALJ supplemented and affirmed the Award. AJF next brought this appeal.

## III. DISCUSSION

**¶5** AJF argues that the ALJ committed legal error when he concluded that AJF was the claimant's statutory employer. The statutory guidelines for determining whether a statutory employer relationship exists are found in A.R.S. § 23-902(B) (2012):

> When an employer procures work to be done for the employer by a contractor over whose work the employer retains supervision or control, and the work is a part or process in the trade or business of the employer, then the contractors and the contractor's employees, and any

---

[1] Rucobo was uninsured on the date of the injury. Wilderness Development carried coverage with Hartford, and AJF with Travelers.

subcontractor and the subcontractor's employees, are, within the meaning of this section, employees of the original employer. For the purposes of this subsection, 'part or process in the trade or business of the employer' means a particular work activity that in the context of an ongoing and integral business process is regular, ordinary or routine in the operation of the business or is routinely done through the business' own employees.

¶6        In order to be a statutory employer, the courts have found that two conditions must be met: "(1) the employer procuring the work to be done for him by a contractor must retain supervision or control of the work and (2) the work is a part or a process in the trade or business of the employer." *Hunt Bldg. Corp. v. Indus. Comm'n*, 148 Ariz. 102, 105, 713 P.2d 303, 306 (1986). In determining whether a statutory employment relationship exists, courts have applied the traditional right to control test that is used to determine whether an individual is an employee or an independent contractor. *Id*. at 106, 713 P.2d at 307. This test examines the totality of the circumstances of the work and various indicia of control between the parties. *See Reed v. Indus. Comm'n*, 23 Ariz. App. 591, 593, 534 P.2d 1090, 1092 (1075). These indicia include: "the duration of the employment; the method of payment; who furnishes necessary equipment; the right to hire and fire; who bears responsibility for workmen's compensation insurance; the extent to which the employer may exercise control over the details of the work, and whether the work was performed in the usual and regular course of the employer's business." *Home Ins. Co. v. Indus. Comm'n*, 123 Ariz. 348, 350, 599 P.2d 801, 803 (1979).

¶7        In this case, it is necessary to examine the indicia as between the claimant and the alleged employers. The claimant testified that Rucobo told him where to work, drove him to work each day, directed his work, and told him how much he would be paid. The claimant did not know who he was performing stucco work for at the time of his injury.

¶8        Rucobo was hired by Terry Walker of Wilderness Development to provide a crew and stucco the exterior of a new custom home being built in Scottsdale, AZ. He and his crew worked at Osborn Stucco during the week, so this was a weekend side job for them. The duration of their employment was the length of time it took to stucco the exterior of this house. Rucobo's crew was paid a lump sum for the job with

no withholding.[2] Walker provided the scaffolding, cement, and other materials for the job.[3] Rucobo provided a cement mixer, and his crew each provided their own plate and trowel.

¶9  In terms of supervision, Rucobo testified that Walker was out of town on the date of the claimant's injury. Rucobo stated that Walker "knows that we know how to do our job and that we know what we have to do." Walker would tell him what needed to be done, let them do it, and then check their work when it was completed. Rucobo did agree that Walker could make changes to the stucco crew's work or fire them since it was "his job."

¶10  Walker testified that he was a licensed general contractor and the owner of Wilderness Development, but he focused his business on concrete and stucco work. The Scottsdale custom home was new construction and required a complete exterior stucco. AJF invited Walker to bid and accepted his bid to provide labor and materials for the exterior lath and stucco. Walker erected the scaffolding and performed the lath work himself, i.e., chicken wire and foam underlying stucco. He hired Rucobo and his crew to perform the plastering, because they were very skilled and did not need his input. [4]

¶11  Walker believed Rucobo to be an independent contractor and responsible for providing insurance for his crew. He did not know who was on Rucobo's crew, had no contact with the claimant, and did not consider himself to be the claimant's employer. Walker stated that he was

---

[2]  Being hired to perform one particular piece of work is indicative of an independent contractor relationship, *see Molnar v. Indus. Comm'n*, 141 Ariz. 530, 532, 687 P.2d 1285, 1287 (App. 1984), as is being paid by the project. *Indus. Comm'n, v. Meddock*, 65 Ariz. 324, 331, 180 P.2d 580, 585 (1947).

[3]  When the employer provides the equipment, it is indicative of an employment arrangement, but when the employee provides the equipment, it indicates an independent contractor status. 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 61.07[1], at 61-18 (2014).

[4]  Walker had several jobs going at the same time, and he tried to visit each one once a day.

responsible to AJF for the final quality of the stucco, and he checked Rucobo's work as he tore down the scaffolding. He agreed that if he or AJF had noted any deficiency in Rucobo's work, either of them could have addressed it directly with Rucobo. Walker also agreed that AJF could fire Wilderness Development.

¶12 Alan Fernandez, AJF's owner, testified that his company builds custom homes. He stated that they provide a turnkey service from building plans to a move in ready home. Fernandez explained that his company hired all of the subcontractors necessary to build a house,[5] ascertained that that each was licensed, bonded, and insured, and orchestrated the sequence of their work. Fernandez stated that AJF usually provided blueprints to several subcontractors in each specialty before accepting a bid. In this case, he selected Wilderness Development for stucco and it provided its own tools and materials for the job. AJF paid each subcontractor the accepted bid amount, and the sub paid their own employees.

¶13 Fernandez explained that he does not personally know how to do stucco, plumbing, or roofing, and he never gave Walker any direction on performing the stucco work. AJF only has four employees to work with its customers and to perform paperwork associated with the business. AJF does carry workers' compensation insurance for them.

¶14 Fernandez testified that as the general contractor, he was responsible to see that all of the work was carried out safely, and he walked the job site two to three times per week to look for hazards and see that the work was progressing. If he noted a problem with a subcontractor's work, he would discuss it with the subcontractor and let them discuss it with their own employees. He noted that in order to fire a subcontractor, he had to follow procedures set out by the Registrar of Contractors.

¶15 In light of this testimony, we examine the elements of the special employer test. First is the right to control. As recognized in the employee/independent contractor cases, the question is "whether the alleged employer retains supervision or control over the method of reaching a certain result, or whether his control is limited to the result reached, leaving the method to the other party." *Southwest Lumber Mills v.*

---

[5] The average is fifty subcontractors, but depending on the home, it can exceed one hundred.

*Indus. Comm'n*, 60 Ariz. 199, 205-06, 134 P.2d 162, 165 (1943); *Hunt*, 148 Ariz. at 105-06, 713 P.2d 306-07.

¶16    With regard to the stucco work, the claimant was a member of Rucobo's crew and Rucobo directed his work. Walker hired Rucobo because Rucobo and his crew were skilled stucco workers and did not require close supervision as Walker was not present at the job site every day. Walker only reviewed Rucobo's work as he removed the scaffolding when the job was finished. Fernandez testified that he did not know how to perform stucco work, and he did not provide any direction to Walker or Rucobo. When he visited the job site two or three times a week, it was to look for hazards and be sure that work was progressing. We find that this evidence establishes that AJF and Walker only exercised limited control over Rucobo and his crew to the extent that a satisfactory end result was reached.

¶17    The second element of the special employer test is whether stucco work was a part or process of the employer's regular business. A general rule of thumb is that the statutory language "covers all the situations in which work is accomplished which this employer, or employers in a similar business, would *ordinarily* do through employees." *Young v. Envtl. Air Prods. Inc.*, 136 Ariz. 158, 165, 665 P.2d 40, 47 (1983) (quoting 1C A. Larson, *Workmen's Compensation Law* § 49.12 (1982)).[6]

> In addition to the test based on regularity or predictability of the activity, and on its relation to the way this employer got this kind of job done in the past, a helpful additional test is that which asks *whether this employer is equipped normally to handle this task, both as to skilled manpower and as to tools.*

*Id*. (emphasis added).

¶18    The testimony as to the various alleged employers established that Rucobo exclusively performed stucco work. For Rucobo, this was his regular work and he had the skilled manpower and the tools to perform it. Walker's business focused on stucco and concrete, and he had the knowledge and tools to perform that work. But he typically subcontracted out large stucco jobs to other subcontractors such as Rucobo.

---

[6]    The section is currently found at 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 70.06[1], at 70-8 (2014).

¶19          Walker's business is reminiscent of the facts in *Anton v. Industrial Commission*, 141 Ariz. 566, 688 P.2d 192 (App. 1984). In *Anton*, a contractor entered into an agreement with a lumber company to harvest trees and deliver the lumber to it. *Id*. at 569, 688 P.2d at 195. The contractor then hired wood cutters to actually perform the work cutting the trees. *Id*. at 568, 688 .2d at 194. The contractor's sole involvement was to pick up the cut wood and deliver it to the timber company. *Id*. at 570, 688 P.2d at 196. When one of the wood cutters was injured, he filed a workers' compensation claim against the contractor. *Id*. at 569-70, 688 P.2d at 195-96. This court held that the claimant was an employee for purposes of workers' compensation because the contractor "did not attempt to contract for a particular well-defined incidental activity which is ancillary to the central concerns of his business," but hired the claimant to perform the "ongoing basic employment activity" itself. *Id*. at 573, 688 P.2d at 199.

¶20          AJF argues that the ALJ should have applied the "relative nature of the work" test to this element. With regard to AJF, the evidence established that it was a general contractor in the business of "building" custom homes, but it did not physically "build" anything itself. Instead, it purchased land, obtained building plans, hired licensed subcontractors, scheduled the sequence of the work, and found home buyers. AJF did not have the skilled manpower or the tools to perform any of the actual building work that it hired the subcontractors to perform. Thus, performing stucco work was not a "part or process" of AJF's regular business.

¶21          Applying the special employer test to the three potential employers, Rucobo's business was stucco work and he had the right to control the claimant's work. Wilderness Development was in essence a stucco subcontractor with the skills and tools to perform stucco work but insufficient manpower. As in *Anton*, it contracted out the heart of its business by hiring a stucco subcontractor to perform the bulk of its work. *See id*. at 569, 688 P.2d at 195. AJF did not perform stucco work. It did not have the skilled manpower, tools or knowledge to do so. AJF's business was to bring together all of the elements necessary to take a piece of bare ground and erect a fully livable home for its customers. For that reason, we find that the ALJ legally erred when he found AJF to be the claimant's special employer.

¶22        For all of the foregoing reasons, the award is set aside.

